1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

|  |  |
|---|---|
| Cameron Threadgill, et al., | No. CV-23-01089-PHX-DJH |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| Saddlebrook Investments, LLC, et al., | |
| Defendants. | |

TO HON. DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:

Before the Court and ripe for disposition are (1) Plaintiffs' Motion for Entry of Default Judgment against Defendants Ryan Morgan and All Done Consulting, LLC, filed September 29, 2023 (Doc. 21) and (2) Plaintiffs' Motion for Award of Attorneys' Fees and Costs Against Defendants All Done Consulting, LLC and Ryan Morgan, filed July 19, 2024 (Doc. 25). The Motions were referred to undersigned on June 4, 2024 and July 30, 2024, respectively (Docs. 22, 27). For the reasons that follow, the undersigned recommends the Motion for Entry of Default Judgment and the Motion for Attorney Fees and Costs be granted.

## I.    PROCEDURAL HISTORY

On June 13, 2023, Plaintiffs filed a Complaint against Defendants Saddlebrook Investments, LLC; Stuart Simonsen; Doe Simonsen; All Done Consulting, LLC; Ryan Morgan; Doe Morgan; and Jeff Mitchell. (Doc. 1.) Plaintiffs alleged federal and state law

claims, and they requested, *inter alia*, damages, pre- and post-judgment interest, and attorney's fees and costs.  (*Id.*)

Defendants Ryan Morgan and All Done Consulting, LLC (collectively, the "All Done Consulting Defendants" or "ADC Defendants") were served.  (Docs. 7, 8.)  The All Done Consulting Defendants did not file an Answer, and Plaintiffs applied for entry of default on July 17, 2023.   (Doc. 14.)  Default was entered by the Clerk of Court as to Defendants Ryan Morgan and All Done Consulting, LLC on July 18, 2023.  (Doc. 17.)

Following service upon them, Defendants Saddlebrook Investments, Simonsen, and Mitchell (collectively, the "Saddlebrook Defendants") reached a settlement with Plaintiffs, and a Notice of Settlement was filed on August 3, 2023.  (Doc. 19.)

On August 4, 2023, Judge Humetewa issued an Order acknowledging receipt of the Notice of Settlement and ordering a stipulation to dismiss or case status report be filed as to the Saddlebrook Defendants no later than October 2, 2023.  (Doc. 20.)  As to the remaining Defendants, the Court ordered that Plaintiffs either dismiss the action or seek default by September 29, 2023. (*Id.*)

On September 29, 2023, Plaintiffs filed the instant Motion for Entry of Default Judgment as to Defendants Ryan Morgan and All Done Consulting, LLC.  (Doc. 21.)  In their Motion, they request an award of damages, pre- and post-judgment interest, and attorney's fees and costs. (*Id.* at 15.)  No Response was filed.  The Motion was referred to undersigned for a Report and Recommendation.  (Doc. 22.)

After considering the Motion as presented and the record as a whole, undersigned determined Plaintiffs had not sufficiently developed the record and ordered an evidentiary hearing be held. (Doc. 23.)  Alternatively, undersigned permitted Plaintiffs to supplement their Motion and provided a briefing schedule for the supplemented Motion.   (*Id.*) Plaintiffs Threadgill and Christy elected to supplement with sworn declarations, and they filed a Motion for Award of Attorneys' Fees and Costs Against Defendants All Done Consulting, LLC and Ryan Morgan.  (Docs. 24, 25.)  The Motion for Attorneys' Fees and

1    Costs was referred to undersigned for a Report and Recommendation.  (Doc. 27.)

2            Plaintiffs' counsel filed a Motion to Withdraw as to Plaintiff Orzalli, and Judge

3    Humetewa granted that Motion to Withdraw on July 30, 2024.  (Docs. 26, 28.)  Judge

4    Humetewa further ordered Plaintiff Orzalli to either retain substitute counsel or file a notice

5    indicating he is representing himself by August 13, 2024.  (Doc. 28.)  Judge Humetewa

6    ordered that if Plaintiff Orzalli did not file a Notice regarding his self-representation or if

7    substitute counsel did not file a Notice of Appearance by August 13, 2024, "the Clerk of

8    Court shall terminate Plaintiff Orzalli as a party to this matter on August 14, 2024." (*Id.* at

9    2.)  Plaintiff Orzalli did not file a Notice indicating he was going to represent himself, and

10   no Notice of Appearance of counsel for him was filed.  Accordingly, the Clerk of Court

11   terminated Plaintiff Orzalli as a party to this case.  (Doc. 30.)  In addition, Defendants

12   Unknown Morgan (named as Doe Morgan) and Unknown Simonsen (named as Doe

13   Simonsen) were terminated as parties by the Clerk of Court on August 15, 2024.  (Doc.

14   29.)

15           Thus, the Motions referred to undersigned (Docs. 25 and 27) concern only Plaintiffs

16   Threadgill and Christy, and unless otherwise specified, undersigned utilizes the terms

17   "Plaintiffs" to refer to Plaintiffs Threadgill and Christy.

18   **II.     MOTION FOR ENTRY OF DEFAULT JUDGMENT**

19           **A.  Legal Standard**

20           Once default has been entered as to a party, the Court has discretion to enter default

21   judgment against that party.  *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089,

22   1092 (9th Cir. 1980). "When entry of judgment is sought against a party who has failed to

23   plead or otherwise defend, a district court has an affirmative duty to look into its

24   jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712

25   (9th Cir. 1999).

26           After the Court has been satisfied that it has personal and subject matter jurisdiction,

27   the Court must consider the factors enumerated by the Ninth Circuit in *Eitel v. McCool*,

28

782 F.2d 1470, 1471-72 (9th Cir. 1986) when deciding whether to grant default judgment. Those factors are: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* Upon default, and thus when applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). In its default judgment analysis, the Court "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

## B. Analysis

Undersigned has considered the record of these proceedings, including the exhibits attached to the Complaint (Docs. 1, 6) and the supplemented declarations of Plaintiffs Threadgill and Christy (Doc. 24-1). Undersigned finds that Plaintiffs Threadgill and Christy have complied with the requirements of Rule 55 of the Federal Rules of Civil Procedure, as they have now supplemented their Motion for Entry of Default Judgment with sworn declarations.

### 1. Jurisdiction

Plaintiffs bring suit under 18 U.S.C. § 78a, *et seq.*, and Arizona law. (Doc. 1.) Pursuant to 28 U.S.C. § 1331 (general "federal question" jurisdiction) and 15 U.S.C. § 78aa (conferring subject matter jurisdiction under federal securities laws), the Court has subject matter jurisdiction over the counts brought under federal law (Counts 5 and 6). *See also Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1313-14 (9th Cir. 1984). The remaining counts (Counts 1-4, 7-8) are brought under Arizona law. Plaintiffs allege this Court has supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367. (Doc. 1 at 3.) Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Undersigned concludes the state law claims form part of the same case or controversy as Plaintiffs' federal law claims for purposes of § 1367(a), because all of the claims "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Trustees of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (citations and internal quotation marks omitted). Undersigned does not find that any exceptions under 28 U.S.C. § 1367(c) apply, and supplemental jurisdiction over the state law claims is present.

"Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), grants jurisdiction to the federal courts and provides for venue and service of process." *Vigman*, 764 F.2d at 1313 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979)). Specifically, "Section 27 provides that any suit or action to enforce any liability or duty created under the Act may be brought in the district where any act or transaction constituting the violation occurred, and process may be served in any district where the defendant is an inhabitant or wherever the defendant may be found." *Id.* at 1314. Thus, nationwide service of process is permitted by 15 U.S.C. § 78aa. *Id.* Venue is proper in the District of Arizona under federal law, as many of the ADC Defendants' alleged acts occurred in Arizona.[1] Turning to personal jurisdiction, "[w]here a federal statute such as Section 27 of the Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Id.* at 1315 (internal quotation and citation omitted). Therefore, "so long as a defendant has

---

[1] The contracts at issue state that any action arising out of them against the "Service Provider" (Saddlebrook Investments, Inc.) must be filed in federal courts located in Texas (for Plaintiff Threadgill) or Montana (for Plaintiff Christy). (Doc. 1-2 at 7, 23.) However, the Saddlebrook Defendants have chosen not to seek enforcement of that provision, as they settled the claims against them. (*See* Doc. 19.) The contracts contain no venue provision vis-à-vis the ADC Defendants. (Doc. 1-2 at 7, 23.)

1    minimum contacts with the United States, Section 27 of the Act confers personal

2    jurisdiction over the defendant in any federal district court." *Id.* Here, the ADC Defendants

3    were served. (Docs. 7, 8.) Further, the uncontested facts put forth in the Complaint and

4    its exhibits show the ADC Defendants conducted business in the United States. (*See* Doc.

5    1.) Undersigned therefore concludes the ADC Defendants have minimum contacts with

6    the United States and personal jurisdiction exists as to each of them.

7           Because jurisdiction is proper, undersigned next considers the *Eitel* factors. The

8    Court notes that Plaintiffs move for default judgment as to their state law claims only.

9    (Doc. 21 at 1.) Thus, the *Eitel* factors are analyzed only as to the state law claims, and

10    undersigned will recommend the federal claims be dismissed because Plaintiffs' sought

11    relief in their Motion is based on their state law claims.

12                  2.  *Eitel* factors

13           In deciding whether to grant default judgment, the Court must weigh "(1) the

14    possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3)

15    the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the

16    possibility of a dispute concerning material facts[,] (6) whether the default was due to

17    excusable neglect[,] and (7) the strong policy underlying the Federal Rules of Civil

18    Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72.

19                a.  Possibility of prejudice to Plaintiffs

20           Undersigned finds the first factor weighs in Plaintiffs' favor as to each count.

21    Plaintiffs have faithfully prosecuted this case since its inception. The ADC Defendants

22    have not participated in this matter since being served. Plaintiffs have no alternative means

23    to resolve the federal claims in the Complaint. Thus, there is a strong possibility of

24    prejudice to Plaintiffs if default judgment is not entered.

25                b.  Merits of Plaintiffs' claims and sufficiency of their Complaint

26           Given the interplay of the second and third *Eitel* factors, undersigned considers them

27    together. *See Eitel*, 782 F.2d at 1472.

28

As discussed, *supra*, the Court has supplemental jurisdiction over the state law claims in this action.  The "service agreement" between Plaintiff Threadgill and Defendants provides that the agreement "will be governed and construed in accordance with the laws of the State of Texas."  (Doc. 1-2 at 7.)  The "service agreement[s]" between Plaintiff Christy and Defendants states that the laws of the State of Montana shall govern.  (*Id.* at 15, 23.)  Although Plaintiffs acknowledged these provisions in their Complaint (Doc. 1 at 6), they failed to analyze the impact of the clauses in their Motion for Default Judgment (*see* Doc. 21).  Undersigned next considers choice of law in order to properly analyze the merits and sufficiency of Plaintiff's claims and Complaint.

i.   Choice of law

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state."  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted).  In this case, the forum state is Arizona.  "Arizona courts follow the Restatement (Second) of Conflict of Laws (hereinafter 'Restatement') as a guide in choice of law questions."  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003) ("Arizona courts apply the Restatement to determine the applicable law in a contract action.").  When a contract "includes a specific choice-of-law provision," the court "must determine whether that choice is 'valid and effective' under Restatement § 187."  *Swanson*, 77 P.3d at 441 (citing *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 203 (Ariz. 1992)).

Section 187 of the Restatement provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Although the parties' respective contracts provide that the laws of Texas or Montana will apply, it appears that §187(2)(b) applies because "Arizona's Securities Act, A.R.S. § 44-2000, prohibits and voids choice-of-law provisions that purport to waive the applicability of the Arizona Securities Act." *R&L Ltd. Invs., Inc. v. Cabot Inv. Props., LLC*, 729 F.Supp.2d 1110, 1113 (D. Ariz. 2010). A.R.S. § 44-2000 provides: "Any condition, stipulation or provision binding any person acquiring any security to waive compliance with this chapter or chapter 13 of this title [Section 44-1991] or of the rules of the commission is void." The statute is rooted in Arizona's "strong public policy to 'protect the public from unscrupulous investment promoters.'" *R&L Ltd.*, 729 F.Supp.3d at 1113 (quoting *Siporin v. Carrington*, 23 P.3d 97, 103 (Ariz. Ct. App. 2001) (internal brackets omitted)). If the transactions at issue "occurred 'within or from' Arizona," then the anti-waiver provision contained in the Arizona Securities Act ("ASA") "would appear to apply." *Id.* at 1114 (quoting A.R.S. § 44-1991(A)).

Here, the undisputed facts in the Complaint establish that the ADC Defendants maintain an office in Arizona and conduct business in Arizona. (Doc. 1 at 2.) The undisputed facts in the Complaint further establish that the ADC Defendants contracted with Plaintiffs for the purported investment opportunity and transmitted funds. (*Id.* at 5.) They further establish the ADC Defendants solicited business online using a video with their Arizona office building in the background, and this video forms part of the inducement of Plaintiffs. (*Id.* at 9, 11.) Although Plaintiffs were not located in Arizona, the undisputed facts are that the ADC Defendants conducted the transactions at issue in this case within or from Arizona. Thus, the ASA's anti-waiver provision appears to apply.

8

1    *See R&L, Ltd.*, 729 F.Supp.3d at 1114.

2    "When a contractual choice-of-law provision is not effective, Arizona courts apply

3    'the law of the state having the most significant relationship to the transaction and to the

4    parties.'" *Id.* (quoting *Landi v. Arkules*, 835 P.2d 458, 463 (Ariz. Ct. App. 1992)).

5    According to the undisputed facts contained in the Complaint, it appears Arizona has the

6    most significant relationship to the transactions and the parties. The ADC Defendants are

7    based in Arizona and conduct business in Arizona. They solicit business from all over the

8    United States. They solicited the business of Plaintiffs (who are not Arizona residents)

9    from Arizona. They transmitted funds (including the funds received from Plaintiffs that

10    are at issue in this case) as part of their business operations, which are based in Arizona.

11    Therefore, Arizona appears to have the most significant relationship to the transactions at

12    issue in this case and the parties to them. Due to Arizona's relationship with the

13    transactions as parties, as well as the strong public policy underlying the Arizona statute

14    discussed above, Arizona law will be applied. *See id.*

15    Having determined that Arizona law applies, undersigned considers the second and

16    third *Eitel* factors vis-à-vis Plaintiffs' state law claims (merits of the claims and sufficiency

17    of the Complaint). Plaintiffs allege breach of contract (Count 1); breach of covenant of

18    good faith and fair dealing (Count 2); fraud (Count 3); consumer fraud, in violation of

19    A.R.S. § 44-1521 *et seq.* (Count 4); sale of securities by an unregistered dealer/salesman,

20    in violation of A.R.S. § 44-1842 (Count 7); and fraud in the sale of securities, in violation

21    of A.R.S. § 44-1991 (Count 8). Undersigned considers each of those claims. In so doing,

22    undersigned takes the facts alleged in the Complaint as true. *Geddes*, 559 F.2d at 560.

23    ii.  Count 1 – Breach of contract

24    Plaintiffs' first claim is for breach of contract. In an action for breach of contract,

25    the plaintiff has the burden to prove the existence of a contract, breach, and resulting

26    damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). The Court must give effect

27    to terms of a contract that are clear and unambiguous. *Town of Marana v. Pima Cty.*, 281

28

P.3d 1010, 1015 (Ariz. Ct. App. 2012).   Applying the second and third *Eitel* factors to this claim, the Court concludes the claim for breach of contract is meritorious.   Each of the contracts entered into by the respective Plaintiffs contains a "Buy Back Agreement" that states the ADC Defendants (referred to as the "Broker" in the contracts) "shall" provide a "refund" to the client (i.e., each Plaintiff) in the event that any client "is dissatisfied with the performance of the Store developed by the Service Provider [the Saddlebrook Defendants] or the quality of the service provided by the Service Provider or Broker." (Doc. 1-2 at 7 (contract with Plaintiff Threadgill) and 23 (contract with Plaintiff Christy).) That provision is clear and unambiguous in each of the contracts, and therefore, the provision's plain meaning must be given.   *Town of Marana*, 281 P.3d at 1015.   According to the undisputed facts in the Complaint, each of the Plaintiffs requested a refund under the Buy Back Agreement section of their respective contracts with the ADC Defendants, but the ADC Defendants have failed to refund their money.   Undersigned finds Plaintiffs have demonstrated the merits of Count 1, and their Complaint sufficiently details their claim.

iii.  Count 2 – Breach of covenant of good faith and fair dealing

Regarding breach of covenant in good faith and fair dealing, Arizona courts have declared:

> Arizona law implies a covenant of good faith and fair dealing in every contract. The covenant requires that neither party act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.   A party breaches the covenant by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain.

*Keg Restaurants Ariz., Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016) (internal citations and quotation marks omitted).   The undisputed facts alleged in the Complaint establish a meritorious claim for breach of this covenant as to the Buy Back Agreement provision in each Plaintiff's contract.    That is, Plaintiffs allege their reasonable expectations to be refunded were rooted in their contracts with the ADC Defendants and

those defendants acted inconsistently with that provision, such that Plaintiffs' right to receive the benefit of their bargain was impaired.  Moreover, the Complaint is sufficiently detailed.  Thus, the second and third *Eitel* factors weigh in favor of Plaintiffs as to Count 2.

### iv.   Count 3 – Fraud

Plaintiffs' third claim alleges fraud by the ADC Defendants.  "To prove fraud, a plaintiff must establish: '(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; and (9) [the hearer's] consequent and proximate injury.'" *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014) (quoting *Nielson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966)).  "[M]agic language is not necessary in pleading fraud, as long as the pleading, considered as a whole, can be construed to plead the nine elements."  *Hall v. Romero*, 685 P.2d 757, 761 (Ariz. Ct. App. 1984); *see also Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979).

After applying the above elements of fraud under Arizona law to the facts as alleged in the Complaint, the Court finds Plaintiffs sufficiently pled their fraud claim and that their claim is meritorious.  Those undisputed facts establish the ADC Defendants made false representations about an "investment" opportunity and those representations were material.  The ADC Defendants knew their statements were false (or were ignorant of their truth) and intended for the hearer to act upon them.  Plaintiffs were ignorant of the statements' falsity and relied on the truth of the ADC's misrepresentations.  Plaintiffs had the right to rely on the statements, which were specific enough to be more than mere puffery.  Plaintiffs were injured by the ADC Defendants' subsequent actions of taking their money and failing to refund as provided under the contracts.  Undersigned finds Plaintiffs have demonstrated the merits of Count 3, and their Complaint sufficiently details their claim.  The second and third *Eitel* factors favor Plaintiffs as to Count 3.

1

v.  Count 4 – Consumer fraud (A.R.S. § 44-1521 *et seq.*)

2

A.R.S. § 44-1522 provides a private cause of action for misrepresentations,

3

concealment, or omissions of material fact made "in connection with the sale or

4

advertisement of merchandise." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87

5

(Ariz. Ct. App. 1983) (stating that the Act "provides an injured consumer with an implied

6

private cause of action against a violator of the act"). "'Merchandise' means any objects,

7

wares, goods, commodities, intangibles, real estate or services." A.R.S. § 44-1521(5).

8

"The clear intent of [A.R.S. § 44-1522] is to protect unwary buyers from unscrupulous

9

sellers." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir.

10

1992). Securities violations may serve as the basis for consumer fraud claims. *State ex*

11

*rel. Corbin v. Pickrell*, 667 P.2d 1304, 1308 (Ariz. 1983).

12

Here, the undisputed facts in the Complaint establish that the ADC Defendants

13

contracted with Plaintiffs to serve as the "Broker" between Plaintiffs and the Saddlebrook

14

Defendants. Thus, the ADC Defendants advertised and sold a service (i.e., "merchandise")

15

to Plaintiffs as defined by Arizona law. Plaintiffs have sufficiently pled that the ADC

16

Defendants made misrepresentations in connection with the ADC's advertisements online

17

and subsequent sale of merchandise to Plaintiffs. Undersigned also concludes Plaintiffs'

18

claim for consumer fraud is meritorious. Thus, the second and third *Eitel* factors favor

19

Plaintiffs as to Count 4.

20

vi.  Count 7 – Sale of securities by unregistered dealer/salesman
(A.R.S. § 44-1842)

21

22

In Count 7, Plaintiffs allege the ADC Defendants violated A.R.S. § 44-1842, which

23

requires anyone who sells securities to be registered to do so.

24

Preliminarily, undersigned considers the definition of a "security" under Arizona

25

law. In Arizona, "security" is defined in A.R.S. § 44-1801(27) as:

26

any note, stock, treasury stock, bond, commodity investment contract,
commodity option, debenture, evidence of indebtedness, certificate of
interest or participation in any profit-sharing agreement, collateral-trust
certificate, preorganization certificate or subscription, transferable share,

27

28

investment contract, viatical or life settlement investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or other mineral rights, real property investment contract or, in general, any interest or instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Whether an investment is a "security" is a question of law, and Arizona courts "give a liberal construction to the term 'security.'" *Siporin*, 23 P.3d at 100-01. "[A]n 'investment contract' arises whenever a person (1) invests money (2) in a common enterprise (3) with an expectation of profits from the efforts of others, and when such third-party efforts are 'the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" *Id.* at 101 (quoting *Nutek Info. Systems, Inc. v. Ariz. Corp. Comm'n*, 977 P.2d 826, 830 (1998) and summarizing the "*Howey* test" under *Secs. & Exch. Comm'n v. W.J. Howey, Co.*, 328 U.S. 293, 301 (1946)). Applying the above definition and the *Howey* test to the undisputed facts in the Complaint, Plaintiffs each entered into an investment contract with the ADC Defendants. Each Plaintiff invested money in a common enterprise with the ADC Defendants with an expectation of profits from the efforts of others whose efforts were the significant ones. *See id.* Thus, a "security" as defined by Arizona law is at issue in this matter.

To bring a civil suit regarding a contract for purchase from a seller of securities made in violation of A.R.S. § 44-1842, a plaintiff must do so under A.R.S. § 44-2001. Specifically, A.R.S. § 44-2001(A) provides that a purchaser of securities may bring suit "to recover the consideration paid for the securities, with interest, taxable court costs and reasonable attorney fees, less the amount of any income received by dividend or otherwise from the ownership of the securities, on tender of the securities purchased or the contract made, or for damages if the purchaser no longer owns the securities." *See also* A.R.S. § 44-2002 (providing for same remedies). The statutory scheme continues with A.R.S. § 44-2003, which states in pertinent part that an action brought under A.R.S. §§ 44-2001, -2002 "may be brought against any person, including any dealer, salesman or agent, who made,

participate in or induced the lawful sale or purchase, and such persons shall be jointly and severally liable … No person shall be deemed to have participated in any sale or purchase solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase." A.R.S. § 44-2003(A). That is, an actor who "merely provide[s] information that contributes to a buyer or seller's decision to close the deal" does not induce a sale or purchase. *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 333 (Ariz. Ct. App. 1996) (bracketed language added). Rather, "liability extends only to persons who have 'more than some collateral involvement in a securities transaction' and to misstatements that have more than 'merely ... the effect of influencing a buyer to make a sale.'" *In re Allstate Life Ins. Co. Litigation*, 971 F.Supp.2d 930, 941 (D. Ariz. 2013) (quoting *Standard Chartered*, 945 P.2d at 333). When a defendant places ads for the securities and shows misleading financial statements to potential purchasers, or directly contacts and provides information to purchasers, inducement occurs. *See id.* at 943 (citing *Strom v. Black*, 523 P.2d 1339, 1341 (Ariz. Ct. App. 1974) and *Grand v. Nacchio*, 236 P.3d 398, 403 (Ariz. 2010)).

Here, the undisputed facts in the Complaint establish the ADC Defendants not only participated in, but induced, Plaintiffs' purchase of the securities. Thus, undersigned finds the claim to be meritorious. Plaintiffs have sufficiently pled the claim in their Complaint. The second and third *Eitel* factors weigh in favor of Plaintiffs regarding Count 7.

### vii. Count 8 – Fraud in sale of securities (A.R.S. § 44-1991)

Plaintiffs' final claim alleges that the ADC Defendants committed fraud during the sale of securities, in violation of A.R.S. § 44-1991. As discussed, *supra*, this matter involves the sale of securities as defined under Arizona law. Moreover, Arizona counts have observed that "the task of proving securities fraud [is] much simpler than proving common-law fraud," as the nine elements required for common law fraud (including damages) are not required to establish statutory securities fraud. *Aaron v. Fromkin*, 994 P.2d 1039, 1042 (Ariz. Ct. App. 2000) (internal citations omitted). A plaintiff's "burden of

1    proof requires only [demonstrating] that the statements were material and misleading." *Id.*

2    Regarding materiality, "a plaintiff must show that the statement or omission would have

3    assumed actual significance in the deliberations of the reasonable buyer," not any particular

4    buyer. *Id.* To establish that the statements were misleading, "[t]he speaker's knowledge

5    of the falsity of the statements is not a required element." *Id.* "The statute instead imposes

6    only an affirmative duty not to mislead." *Id.*

7        Here, Plaintiffs established, through the undisputed facts in their Complaint, that the

8    ADC Defendants made statements that were material (i.e., they assumed actual

9    significance to a reasonable buyer) and misleading; thus, their claim is meritorious.

10   Plaintiffs' Complaint sufficiently detailed their claim for securities fraud under Arizona

11   law. Accordingly, undersigned concludes the second and third *Eitel* factors favor Plaintiffs

12   on Count 8.

13                              c.  Amount of money at stake

14       Under the fourth *Eitel* factor, undersigned considers the amount of money at stake

15   in relation to the seriousness of the conduct of the ADC Defendants. *See PepsiCo., Inc. v.*

16   *Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). Plaintiffs seek damages in

17   the amount of $105,800.00, which undersigned notes represents $35,000.00 in damages as

18   to each of the three originally-named Plaintiffs.[2] Because Plaintiff Orzalli was terminated

19   as a party after the Motion was filed, undersigned construes the Motion's sought amount

20   to reflect the remaining number of Plaintiffs, or $70,000.00. The record before the Court

21   indicates that Plaintiffs Threadgill and Christy each paid Defendants $35,000.00 pursuant

22   to each Plaintiff's contract with the ADC Defendants. (Doc. 24-1 at 2 (Plaintiff Threadgill)

23   and 7 (Plaintiff Christy); *see also* Doc. 1 at 30 (stating purchase price of $35,000.00 and

24   referring to each separate contract containing that price amount at Doc. 1-2), Doc. 1-5

25   (Plaintiff Christy's signed certification that he made the purchase under the Service

26

27   ─────────────────
     [2] The Court considers *infra* the sufficiency of Plaintiff's evidence regarding sought

28   damages.

Agreement in August 2022 as described in the Complaint) and Doc. 6-1 (Plaintiff Threadgill's signed certification that he made the purchase under the Service Agreement in August 2022 as described in the Complaint).)  Plaintiffs have established damages in the amount of $35,000.00 for each of their respective Service Agreements.

Plaintiffs further seek pre-judgment interest of $9.58 per day since December 1, 2022. (Doc. 21 at 14.)  Plaintiffs arrive at that request by first arguing that they are entitled to pre-judgment interest because pre-judgment interest "on a liquidated claim is matter of right" under Arizona law, and their claim is liquidated.  (*Id.*) (citing *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir. 2001)).  Plaintiffs further state that they began making demands for a refund of their $35,000.00 investments on December 1, 2022, thus making the amount owed by the ADC Defendants "fully calculable and known" by that date.  (*Id.*)  Because A.R.S. § 44-1201 requires pre-judgment interest to accrue at 10% per annum, they request $9.58 per day ($35,000.00 x .1 ÷ 365) beginning December 1, 2022.  (*Id.*)

Pre-judgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to address." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987).  "It is well settled that pre[-]judgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism." *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). "Thus, state law applies to [a p]laintiff's claim for pre[-]judgment interest under state law unless federal law preempts it." *Id.*   Undersigned finds no federal law preempts Plaintiffs' claim for pre-judgment interest and therefore applies Arizona law.

Under A.R.S. § 44-1201(A)(2), unless the parties' contract states otherwise, "pre[-]judgment interest is awarded at 10% on any loan ('money lent at interest'), indebtedness ('something (as an amount of money) that is owed'), or other obligation ('things of the same nature or class as 'loan' and 'indebtedness'')." *Ariz. State Univ. Bd. of Regents v.*

1    *Ariz. State Ret. Sys.*, 369 P.3d 623, 625 (Ariz. 2017) (quoting *Metzler v. BCI Coca-Cola*

2    *Bottling Co. of Los Angeles*, 329 P.3d 1043, 1048 (Ariz. 2014)).  Although a majority of

3    cases involving liquidated damages may involve "indebtedness," the two are not

4    necessarily the same.  *See id.* at 626.

5            According to Plaintiffs' sworn declarations and documentation appended thereto,

6    the amount owed under the Buy Back Agreement by the ADC Defendants was demanded

7    beginning on March 28, 2023 by at least one of the Plaintiffs.  (*See* Doc. 24-1 at 2-5

8    (showing Plaintiff Threadgill requested payment on March 28, 2023) and 7 (showing

9    Plaintiff Christy requested payment on April 3, 2023).  The demanded refund under the

10   Buy Back Agreement constituted "something (as an amount of money) that [was] owed,"

11   and therefore was an "indebtedness" as defined by Arizona law.  *Ariz. State Univ. Bd. of*

12   *Regents*, 369 P.3d at 625.  The record reflects that the parties did not stipulate in any Service

13   Agreement to a legal rate of interest.  (*See* Doc. 1-2.)  Thus, under A.R.S. § 44-1201(A)(2),

14   the rate of pre-judgment interest for indebtedness is 10% per annum.  Plaintiffs' calculation

15   of $9.58 per day from March 28, 2023 will therefore be recommended when the Court

16   determines the amount of pre-judgment interest.  Undersigned recommends the accrual

17   date of March 28, 2023, rather than Plaintiffs' requested date of December 1, 2022, as

18   Plaintiffs have not provided any evidence to support the earlier date.[3]

19           In addition to damages of $35,000.00 per Plaintiff (for a total of $70,000.00) and

20   pre-judgment interest (which will total approximately $5,000.00, depending on the date of

21   final entry of judgment), Plaintiffs request an award of attorney's fees and costs.  That

22   request will be addressed in this Report and Recommendation, *infra*.

23           Certainly, an amount exceeding $75,000.00 is a substantial amount of money.

24   However, the amount is proportional to the seriousness of the allegations against the ADC

---

26   [3] Because the kind of pre-judgment interest sought in Plaintiffs' default judgment motion
27   is the same as what was sought in the Complaint, and because the amount of pre-judgment
     interest does not exceed what was sought in the Complaint, Plaintiffs do not run afoul of
     Rule 54(c) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 54(c) (requiring
28   that a default judgment not differ in kind or exceed the amount demanded by the pleadings).

1    Defendants and represents only the initial "investment" made by each Plaintiff and pre-

2    judgment interest awarded pursuant to statute. Undersigned finds the amount of sought

3    damages to be reasonable. This factor weighs in favor of default judgment.

4                          d.    Possibility of factual dispute

5            The fifth *Eitel* factor requires the Court to consider the possibility of dispute

6    concerning the material facts. This factor favors default judgment on all claims, as the

7    ADC Defendants have failed to participate in this matter since being served. The ADC

8    Defendants have made no discernible effort to challenge Plaintiffs' Complaint or engage

9    in the discovery process.

10                          e.    Excusable neglect

11           Sixth, undersigned considers whether the default was due to excusable neglect. The

12   record is devoid of any indication that the ADC Defendants' failure to participate in this

13   case or otherwise defend against the Complaint is the result of excusable neglect. The

14   ADC Defendants were duly served with this lawsuit. The ADC Defendants were therefore

15   made aware of the pendency of this matter and its attendant obligations. No evidence to

16   indicate the ADC Defendants have excusably neglected this matter is before the Court.

17   Thus, the factor weighs in favor of default judgment.

18                          f.    Policy consideration

19           Finally, undersigned is mindful of "the general rule that default judgments are

20   ordinarily disfavored," and that matters "should be decided upon their merits whenever

21   reasonably possible." *Eitel*, 782 F.2d at 1472. However, the ADC Defendants have not

22   engaged in this lawsuit, despite being served. The ADC Defendants' conduct has rendered

23   decision of this case on its merits impossible.

24           After considering and weighing the *Eitel* factors on all state law claims contained in

25   the Complaint, undersigned finds default judgment is appropriate and recommends to the

26   District Judge that default judgment be entered on those claims (Counts 1, 2, 3, 4, 7, and

27   8).

28

1        3. <u>Damages</u>

2        When considering the amount of damages, the Court does not take the factual

3   allegations contained in the Complaint as true. *See Geddes*, 559 F.2d at 560; *TeleVideo*

4   *Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir.1987). Rather, Plaintiffs are required

5   to prove up the damages they sought in their Complaint. *Philip Morris, U.S.A. v. Castworld*

6   *Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). Further, "a default judgment must not

7   differ in kind from, or exceed in amount, what is demanded in" Plaintiffs' Complaint. Fed.

8   R. Civ. P. 54(c). "In determining damages, a court can rely on the declarations submitted

9   by the plaintiff or order a full evidentiary hearing." *Philip Morris*, 219 F.R.D. at 498 (citing

10  Fed. R. Civ. P. 55(b)(2)). An evidentiary hearing is not required where "the amount

11  claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650

12  F.2d 1154, 1161 (9th Cir. 1981). A district court may properly rely on affidavits or other

13  records supplied by a plaintiff when determining damages, and no hearing is required if

14  the court is able to ascertain damages based on those records. *See Lasheen v. Embassy of*

15  *The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015).

16       Undersigned has carefully reviewed the Complaint (Doc. 1) and the exhibits thereto,

17  as well as Plaintiffs' sworn declarations and supporting documentation (Doc. 24-1). First,

18  each Service Agreement detailed that each Plaintiff contracted to pay $35,000.00 to

19  Defendants. (Doc. 1-2 at 3 (Plaintiff Threadgill) and 20 (Plaintiff Christy).) Each Plaintiff

20  further signed certifications stating they each made the purchase described in the

21  Complaint, pursuant to each of their respective Service Agreements. (Doc. 1-5 (Plaintiff

22  Christy's signed certification) and Doc. 6-1 (Plaintiff Threadgill's signed certification).)

23  The Complaint included a specific dollar amount of damages and provided sufficient detail

24  regarding the relief sought. Furthermore, the Complaint described that Plaintiffs sought

25  pre-judgment interest. (*Id.* at 32-33, 47, and 59.) Next, both Plaintiff Threadgill and

26  Plaintiff Christy executed sworn declarations detailing when they entered into their

27  respective service agreements and the dates they paid their "investment amount." (Doc.

28

24-1.)  Specifically, Plaintiff Threadgill's declaration avers he entered into a Service Agreement with the ADC Defendants on August 17, 2022, and that he paid the ADC Defendants a total of $35,000.00 between August 17, 2022 and August 25, 2022.  (*Id.* at 2.)  Plaintiff Christy's declaration avers Plaintiff Christy signed his Service Agreement with the ADC Defendants on June 22, 2022 and he wired $35,000.00 to a bank account operated by the ADC Defendants on June 30, 2022.  (*Id.* at 7.)  After considering the record before it, undersigned finds Plaintiffs have provided sufficient facts to establish that Plaintiffs paid $35,000.00 each, for a total of $70,000.00.[4]

Undersigned now turns to Plaintiffs' request for pre-judgment interest.  "Under Arizona law, a claim is liquidated for purposes of awarding pre[-]judgment interest if the amount of damages can be computed with exactness."  *Interstate Markings, Inc. v. Mingus Constructors, Inc.*, 941 F.2d 1010, 1015 (9th Cir. 1991); *see also Transamerica Ins. Co. v. Trout*, 701 P.2d 851, 857 (Ariz. Ct. App. 1985) ("Pre-judgment interest is due on liquidated claims.").  "A claim is liquidated if the evidence furnishes data which if believed makes it possible to compute the amount with exactness."  *Transamerica Ins. Co.*, 701 P.2d at 857. Here, Plaintiffs' damages were determined by the exact amount each Plaintiff paid to Defendants.  Plaintiffs' claims are therefore liquidated, and they are entitled to pre-judgment interest.  Furthermore, pre-judgment interest is a matter of right under Arizona law.  A.R.S. § 44-1201.  Thus, it constitutes part of the merits judgment sought by Plaintiffs in their Motion, such that Plaintiffs must "prove up" their request for pre-judgment interest. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175-77 (1989) (analyzing discretionary pre-judgment interest and holding "pre[-]judgment interest is an element of [the] plaintiff's complete compensation," and stating in footnote 3 the same for mandatory pre[-]judgment interest) (internal quotations and citations omitted); *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1132 (9th Cir. 2004) (holding that *Osterneck*'s reasoning and footnote

---

[4] Furthermore, based on the documentation provided by Plaintiffs, undersigned concludes no evidentiary hearing is needed to resolve their default judgment motion.

1  3 of *Osterneck* apply to mandatory pre-judgment interest); *In re Exxon Valdez*, 484 F.3d at

2  1101.

3      The undisputed record shows that a pre-judgment interest percentage was not

4  contained in the parties' Service Agreements (*see* Doc. 1-2), and therefore the pre-

5  judgment interest is calculated at 10% by operation of Arizona statute.  A.R.S. § 44-

6  1201(A)(2).  As explained, *supra*, the daily rate is therefore $9.58 (which represents

7  $35,000.00 x .1 ÷ 365).  In their sworn declarations, both Plaintiffs avow they demanded

8  their refund from the ADC Defendants.  (*See* Doc. 24-1 at 2, 7.)  Specifically, as to Plaintiff

9  Threadgill, he declares that he demanded his refund from the ADC Defendants on March

10 28, 2023, and he provides a copy of that demand.  (*Id.* at 2-5.)  As to Plaintiff Christy, he

11 declares that he demanded his refund from the ADC Defendants by sending them an

12 electronic communication on April 3, 2023.  (*Id.* at 7.)  Thus, the record shows a demand

13 for repayment was made by one of the Plaintiffs as early as March 28, 2023, and

14 undersigned recommends that date be utilized as the accrual date for purposes of

15 calculating pre-judgment interest.

16     Therefore, in summary, undersigned will recommend that the Motion be granted in

17 the amount of $70,000.00 (representing each Plaintiff's $35,000.00 investment amount)

18 plus pre-judgment interest in the amount of $9.58 per day, starting on March 28, 2023.  To

19 the extent that Plaintiffs continue to request an earlier accrual date of December 1, 2022

20 for their sought pre-judgment interest, undersigned recommends that request be denied

21 because Plaintiffs' sworn declarations do not support such a request.

22         4.  Post-judgment interest

23     Plaintiffs request post-judgment interest be awarded under 28 U.S.C. § 1961.  (Doc.

24 21 at 15.)  They requested the same relief in their Complaint.  (Doc. 1 at 59.)

25     "It is settled that even in diversity cases '[p]ost-judgment interest is determined by

26 federal law.'" *Northrop Corp. v. Triad Int'l Mktg. Corp. S.A.*, 842 F.2d 1154, 1155 (9th

27 Cir. 1988) (quoting *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co. of*

28

1    *Pittsburgh*, 801 F.2d 1560, 1570 (9th Cir. 1986)).  As Plaintiffs state, the applicable statute

2    is 28 U.S.C. § 1961.  Post-judgment interest pursuant to that statute will be recommended

3    by undersigned.

4    **III.   MOTION FOR ATTORNEYS' FEES AND COSTS**

5           In addition to damages and interest, Plaintiffs requested an award of attorneys' fees

6    and costs in their motion for default judgment.  (Doc. 21 at 15.)  In that default judgment

7    motion, they briefly cited the Court to two Arizona statutes and referred the Court to "a

8    separately filed application."  (*Id.*)  However, as the Court previously observed, the docket

9    did not contain any additional application for attorneys' fees and costs, and the Court

10   permitted Plaintiffs to supplement their Motion.  (*See* Doc. 23.)  Plaintiffs then filed a

11   separate Motion for Award of Attorneys' Fees and Costs Against Defendants All Done

12   Consulting, LLC and Ryan Morgan.  (Doc. 25.)  The Court analyzes that Motion.

13          Although Plaintiffs properly cite to LRCiv 54.2 in their Motion (Doc. 25 at 1), the

14   Court finds Plaintiffs have failed to fully comply with that Rule in many, important ways.

15   LRCiv 54.2(c) states that a memorandum in support of a motion for attorneys' fees and

16   costs "<u>shall</u> include a discussion of the following matters with appropriate headings and in

17   the order listed below."  (Emphasis added.)  The suggested headings and topics of

18   discussion are delineated in the Rule as "Eligibility," "Entitlement," and "Reasonableness

19   of Requested Award."  LRCiv 54(c)(1)-(3).

20          LRCiv 54.2(c)(1) requires that the memorandum in support of fees and costs first

21   "must specify the judgment and cite the applicable statutory or contractual authority upon

22   which the movant seeks an award of attorneys' fees and related non-taxable expenses."

23   Plaintiffs' Motion is devoid of any citation to authority regarding their eligibility for

24   attorneys' fees.  (*See* Doc. 25.)

25          Similarly, LRCiv 54.2(c)(1) requires that a memorandum in support of fees and

26   costs "set forth a description of the nature of the case and must identify the claims or

27   defenses as to which the party prevailed and the claims or defenses as to which the party

28

did not prevail."  Again, the Motion (Doc. 25) did not do anything of the sort.

LRCiv 54.2(c)(1) goes on to require the memorandum contain citations to "relevant legal authority governing the standard by which the court should determine eligibility" for an award of fees and costs.  No such citations were provided by Plaintiffs.  (*See* Doc. 25.)

LRCiv 54.2(c)(2) further requires that the movant "discuss the applicable factors deemed relevant in determining whether attorneys' fees and related non-taxable expenses should be allowed, with citation(s) to relevant legal authority."  Plaintiff's instant Motion contains no such discussion.  Plaintiffs' Motion also fails to comply LRCiv 54.2(c)(2)'s directive that the moving party "cite the applicable legal authority supporting" a request for fees and costs associated with the preparation of the attorneys' fees motion, because the instant Motion asks for an award of those fees and costs but cites to no supporting authority. (*See* Doc. 25.)

Indeed, the sole portion of LRCiv 54.2(c) that Plaintiffs (implicitly) address in their instant Motion is LRCiv 54.2(c)(3), which concerns the reasonableness of the requested award.  (*See* Doc. 25.)  In other words, their Motion assumes they are eligible and entitled to an award of fees and costs, without citing the Court to a single case or statute in their memorandum.  (*See id.*)  Their Motion, though, does address some of the reasonableness factors listed in the Rule.  *See* LRCiv 54.2(c)(3)(A)-(M).  Because that portion of the Rule is permissive (i.e., it does not require discussion of every factor), the Court does not find the Rule 54.2(c)(3) deficiency alone to be fatal to the Motion.

In addition to attorneys' fees, Plaintiffs seek an award of costs.  (*See* Doc. 25.)  Other than the caption of Plaintiffs' Motion and first and last sentence of their Motion/memorandum, however, Plaintiffs make no mention of costs.  (*See id.*)  Instead, all headings and discussion focus solely on attorneys' fees.  (*See id.*)  The Court finds that as to sought costs, the Motion completely fails to comply with LRCiv 54.2(e)(3).  That Rule requires that a *separate* portion of the itemized statement in support of a motion requesting costs "identify each related non-taxable expense with particularity."  Plaintiffs' itemization

1    submitted lists various costs, but they are not separated as required by the Rule.  (*See* Doc.

2    25-1.)  Moreover, the same Rule requires that the itemization should "attach copies of

3    applicable invoices, receipts, and/or disbursement instruments."  No such copies were

4    appended.  (*See id.*)

5    　　　　Therefore, as described above, Plaintiffs have failed to comply with LRCiv 54.2 in

6    various respects, and as to both attorneys' fees and costs.  On that basis, undersigned will

7    recommend that the Motion be denied for failure to comply with LRCiv 54.2.  However,

8    undersigned recognizes that a more complete analysis may be helpful if the District Judge

9    determines it is in the interests of judicial economy and justice to consider the default

10   judgment motion and the motion for attorneys' fees and costs together, because the default

11   judgment motion contained a single, four-sentence paragraph requesting attorneys' fees

12   and costs.  (*See* Doc. 21 at 15.)  Undersigned recognizes such an approach requires some

13   shoehorning of extremely truncated arguments made in the default judgment context into

14   an attorneys' fees motion context, which LRCiv 54.2(c) would seem to bar[5], but in the

15   interest of completeness, undersigned will assume *arguendo* that it is able to find Plaintiffs

16   are entitled to, and eligible to receive, an award of attorneys' fees and costs.[6]  With that

17   ――――――――――――

18   [5] LRCiv 54.2(c) requires that a memorandum of points and authorities be filed, and a single
     paragraph in a default judgment motion is not a memorandum.  Further, LRCiv 54.2(c)(1)
19   and (2) are clear that factors specific to the analysis pertaining to attorneys' fees and costs
     must be discussed in the memorandum.  Plaintiffs did nothing of the sort in their default
20   judgment motion or in their attorneys' fees motion.

21   [6] To make this assumption, undersigned considers the default judgment motion and the
     attorneys' fees and costs motion in concert, as follows:

22
         As to eligibility and entitlement (attorneys' fees):  Plaintiffs' attorneys' fees motion
23   contains no discussion of authority supporting eligibility for fees and costs.  (*See* Doc. 25.)
     Undersigned recognizes, however, that Plaintiff's initial default judgment motion
24   contained a single paragraph devoted to fees and costs.  (Doc. 21 at 15.)  A single paragraph
     can hardly be considered a memorandum in support of the request under LRCiv 54.2(c),
25   but undersigned acknowledges that Plaintiffs identified in that paragraph that their service
     agreements provided that the "Client," or each respective Plaintiff, will be awarded his
26   reasonable attorneys' fees in the event that the Client brings suit to enforce their contract.
     (*See id.*; *see also* Doc. 1-2 at 8 (as to Plaintiff Threadgill) and 24 (as to Plaintiff Christy).)
27   Further, Plaintiffs could be found to be the "prevailing party," as Plaintiffs "succeed[ed]
     on any significant issue in litigation which achieve[d] some of the benefit the part[y] sought
28   in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v.*

assumption, undersigned turns to a lodestar analysis.

"District courts must calculate awards for attorneys' fees using the 'lodestar' method." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2008). To calculate the lodestar, the Court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (citing *McGrath v. Cty. of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995)). After conducting the calculation, the Court determines whether the lodestar amount is reasonable. *Ferland*, 244 F.3d at 1149 n.4.

Therefore, undersigned first considers the lodestar amount. "When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours worked and the rate paid. In addition, that party has the burden to prove that the rate charged is in line with the 'prevailing market rate of the relevant community.'" *Carson v.*

---

*Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Thus, by operation of the parties' contract, Plaintiffs could be found to be entitled to an award of their reasonable attorneys' fees. Undersigned further recognizes that "reasonable attorney fees" are allowed under A.R.S. §§ 44-2001, and an award is alternatively available under that statute. Finally, as to attorneys' fees, Plaintiffs listed in their default judgment motion that they are permitted attorneys' fees under A.R.S. § "12-341.01." (Doc. 21 at 15.) A.R.S. § 12-341.01(A) allows a court to award reasonable fees to the successful party "[i]n any contested action arising out of a contract." However, Plaintiffs failed to acknowledge, must less analyze, the relevant factors under *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Without that briefing, undersigned is not inclined to consider an award under this statute. *See Alpha Prop. & Cas. Ins. Co. v. Freedom Movers LLC*, No. CV-19-05660-PHX-DWL, 2020 WL 4346745, at *5 (D. Ariz. Jul. 29, 2020) (declining to award fees in contract default judgment action where *Warner* factors were unaddressed). Indeed, one need not go that far, given the parties' contracts and other statutory authority could arguably provide alternative bases for the award of attorneys' fees.

As to eligibility and entitlement (costs): Again, Plaintiffs' motion for fees and costs contains zero citations to, or discussion of, authority in support of a request for costs. (See Doc. 25.) However, Plaintiffs' initial default judgment motion requested costs in the same paragraph as fees. (Doc. 21 at 15.) In that paragraph, Plaintiffs invoke A.R.S. § 12-341.01. (*Id.*) However, that statute address attorneys' fees, not costs. *See* A.R.S. § 12-341.01. Although not cited by Plaintiffs, A.R.S. § 12-341 provides: "The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law." Thus, under that statute, an award of costs could be found as being mandatory under Arizona law, as Plaintiffs could be considered the successful party in this matter. Moreover, in their default judgment motion (Doc. 21 at 15), Plaintiffs request costs under A.R.S. § 44-2001, which states the purchaser of securities may recover their "taxable court costs." Plaintiffs could be found to be entitled to relief under A.R.S. § 44-2001.

*Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citing *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996)); *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (quoting *Blum v. Stenson*, 465 U.S. 886, 895) (1984) ("Reasonable hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'"). The "relevant community," in turn, "is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Here, Plaintiffs' counsel each seek fees at an hourly rate of $385.00 and $420.00, respectively, and paralegal fees of $135.00 and $240.00, respectively. (Doc. 25 at 2-3.) In support of the requested amounts, counsel provide a declaration discussing their rates of $385.00 and $420.00. (Doc. 25-1 at 2-3.) The Motion provides the Court with citations to two other matters in this Court from 2009 and 2010 where the Court found hourly rates of $350.00 and $400.00 to be reasonable in consumer law cases. (Doc. 25 at 3.) Undersigned finds an hourly rate of $350.00 could be determined to be reasonable in this case for counsel.

In addition to counsel, the declaration refers to a law clerk's hourly rate of $150.00 (*id.* at 3), but that rate was not discussed or requested in the Motion or supporting memorandum (*see* Doc. 25). The Motion and declaration are therefore inconsistent in this regard. Moreover, there is no discussion in the declaration as to how or why $150.00 is reasonable for a law clerk or this particular law clerk. (*See* Docs. 25, 25-1.) The Court was provided with no support for why that rate is customary, or what the particular qualifications or experience of the specific law clerk are. (*See id.*) Similarly, the declaration continues by listing four paralegals, all of whom have a different rate that they bill at (ranging from a low of $105.00 to a high of $240.00 hourly); two of the four rates included in the declaration are not listed in the Motion. (*See* Doc 25-1 at 3.) Thus, again, the Motion and declaration are inconsistent. Further, the declaration contains no information on the experience or qualifications of any of the paralegals, other than making

the broad statement that they "have considerable experience" and "normally bill" at the four rates, which are "consistent with the prevailing rates for paralegals in the legal community." (*See id.*) Presumably, there is some difference between paralegals whose hourly rate vary from $105.00 and $240.00, but the declaration makes no attempt to discuss the paralegals' separate experience or qualifications. (*See id.*) The declaration also fails to discuss what "legal community" it is referring to or considering, or to support what the "prevailing rates" in that community are. (*See id.*)

Without further, specific information, undersigned cannot determine an hourly rate needed to calculate the lodestar amount for any professional other than counsel. Had the Motion fully complied with the Local Rules, and had the Motion been consistent with the declaration in support of it, undersigned likely would have been able to resolve the issue. As to the law clerk and paralegals, Plaintiffs have failed to meet their burden under *Carson*. Therefore, undersigned would recommend that the Motion be denied as to all professionals except for counsel, and it would be inclined to end its analysis there with the exception of entries pertaining to counsel's time.

Even assuming undersigned had been able to completely calculate the applicable hourly rates, undersigned observes that the itemization of fees and costs (Exhibit B, Doc. 25-1 at 22-32) is troublesome in many respects related to reasonableness of the number of hours worked. To name a few:

- The itemization contains fees and costs that are related to individuals who were never parties to this case. Specifically, the itemization lists fees associated with individuals such as "potential client Andrew Lourigan" and "potential client J. Orzilla." (*See* Doc. 25-1 at 22.) Plaintiffs have cited the Court to no authority in support of a request for fees and costs associated with non-parties to this case.[7]

---

[7] The Court recognizes that the itemization indicates Mr. Lourigan was apparently later referred to as an "unnamed investor" in Plaintiffs' Complaint (*see id.* at 25), but Plaintiffs have not cited the Court to authority indicating that cultivating a potential client who apparently declines to participate in the case, but perhaps agrees to be listed as an unnamed investor, is properly billed in this context.

- The itemization is replete with entries related to defendants who are not parties to the Motion.  The parties related to the instant Motion are Plaintiff Threadgill, Plaintiff Christy, Defendant Morgan, and Defendant All Done Consulting, LLC.  The remaining defendants have settled, according to the Notice of Settlement filed with the Court.[8]  (Doc. 19.)  For reasons that are not explained in the Motion or declaration,[9] the itemization contains entries for service on the now-settled defendants, settlement discussions with the now-settled defendants, discussions with the now-settled defendants on method of settlement payment, drafting the settlement agreement with those defendants, FedEx shipping costs for disbursement of settlement checks, confirmation of receipt of payment by Plaintiffs, and the like.  (*See* Doc. 25-1 at 27-30.)

- The itemization also includes various entries related to Plaintiff Orzalli. (*See* Doc. 25-1 at 23-25, 27, 30-31.) However, Plaintiffs' counsel filed a motion to withdraw as to Plaintiff Orzalli, and that Motion was granted.[10]  (Docs. 26, 27.) The attorneys' fees motion indicates it is based on the default judgment motion (*see* Doc. 25 at 1-2), but Plaintiffs' counsel is pursuing the default judgment motion as to Plaintiffs Threadgill and Christy only (*see* Docs. 24 at 1, 26). Plaintiffs' counsel has cited the Court to no authority indicating on what basis they properly seek an award of fees for Plaintiff Orzalli at this juncture.  Plaintiff

---

[8] The Court notes that a stipulation for dismissal was apparently drafted in October 2023 and settlement payments were disbursed to Plaintiffs in March 2024.  (*See id.* at 31.)  Per Judge Humetewa's August 4, 2023 Order, which was entered after the Notice of Settlement was filed, the stipulation (or a status report) was to be filed by October 2, 2023.  (Doc. 20.) The docket does not reflect any stipulation to dismiss or status report, or request for extension of time to file such a stipulation or status report, was ever filed.

[9] This is particularly concerning to the Court, given that the itemization includes an entry that the time entries were "review[ed]" in order "to ensure accuracy of" the attorneys' fees motion.  (*See* Doc. 25-1 at 32.)

[10] In granting the Motion to Withdraw, Judge Humetewa noted counsel mistakenly moved for withdrawal under Arizona Rule of Civil Procedure 5.3.  (Doc. 20 n. 1.)  That Rule "does not apply to these federal proceedings."  (*Id.*)

1    Orzalli is no longer a party to this case.  (*See* Docs. 28, 30.)  Once again,

2    compliance with LRCiv 54.2 perhaps would have addressed this issue.

3    • The amount of time required to perform various tasks appears excessive.  For

4    example, the drafting of the Complaint occupies no less than 36 separate entries

5    in some manner, for a total of over 70 hours.  (*See* Doc. 25-1 at 22-25.)  While

6    undersigned recognizes that Plaintiffs initially pled this matter as a class action

7    with multiple federal and state law claims, the number of hours spent seems

8    excessive.  In addition, the entries related to the Complaint's drafting are, at

9    times, inconsistent – for example, after two other individuals had billed for

10    drafting and revising the Complaint, another attorney billed as "Began writing

11    complaint."  (*See* Doc. 25-1 at 22.)  It is also curious that additional legal

12    research was needed as to the "elements of consumer fraud, fraud, and 10[b]-5

13    claims to use in motion for default judgment" when previous entries indicated

14    extensive research at the pleading stage (*see id.* at 22-25, 30), but undersigned

15    will give counsel the benefit of the doubt, as perhaps additional research vis-à-

16    vis default judgment was completed.  Another example of entries that consume

17    a significant amount of time are reviewing "videos" and "YouTube videos."

18    (*See id.* at 22-23, 25.)  Undersigned recognizes that Plaintiffs' claims are based

19    on online solicitations (often in the form of videos) made by Defendants.  (*See*

20    Doc. 1.)  However, the entries total over 21 hours[11] of review, and they indicate

21    multiple individuals reviewed videos repeatedly.  (*See id.* at 22-23, 25.)  Without

22    further explanation (e.g., the duration and number of videos that would justify

23    all of the hours claimed, why repeated viewings were necessary when the

24    research conducted ostensibly would have made it clear quotes and a clear record

25    were needed for pleading fraud, and the like), the Court is left with an

26    _____

27    [11] In this figure, undersigned does not include other video-related entries wherein counsel
and staff are described as having "strategy" meetings about the videos and how to organize

28    and index them.

1   insufficient record to conclude that the amount of hours expended reviewing
2   videos was reasonable.

3   • As the Supreme Court observed in *Missouri v. Jenkins*, "purely clerical or
4   secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless
5   of who performs them … '[The] dollar value [of that non-legal work] is not
6   enhanced just because a lawyer does it.'"  491 U.S. 274, 288 n.10 (1989)
7   (quotation omitted); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir.
8   2009) (clerical tasks "should [be] subsumed in firm overhead rather than billed
9   at paralegal rates").  For example, undersigned has reviewed and determined the
10  following tasks constitute clerical or secretarial tasks for which attorneys' fees
11  should not be awarded:  (1) creating a DropBox link and emailing it to a potential
12  client (5/10/23); (2) emails between paralegal and service company and
13  calendaring (6/26/23, 6/27/23); (3) filing certificates of service (6/28/23); (4)
14  organizing documents and preparing DropBox link (7/5/23); (5) emailing the
15  Arizona Corporation Commission and resending a DropBox link (7/6/23); (6)
16  calling a client to schedule another call (7/7/23); (7) sending documents to a
17  now-settled defendant (7/7/23); (8) mailing documents to all defendants
18  (7/7/23); and (9) filing waiver of service (7/20/23).

19  • Some block billing is included in the itemization. For example, one paralegal's
20  entry listed sending emails and sending a waiver of service to a defendant, but
21  also indicated she did substantive paralegal work, e.g., drafting an application
22  for entry of default (7/14/23).  That paralegal had multiple, similar entries:  (1)
23  7/17/23 entry included finalizing the default application, but also listed sending
24  an email and filing documents; (2) 9/29/23 entry indicated she revised the
25  attorneys' fees motion but also did calendaring, emailing, and mailing; (3) 1/4/24
26  entry stated she reviewed emails from Plaintiff Orzalli and analyzed settlement
27  agreement, but also updated a spreadsheet and calendared; (4) 3/5/24 entry

28

indicated she prepared client correspondence regarding settlement checks, as well as finalized and sent via FedEx and postal mail; and (5) 7/1/24 entry where she reviewed this Court's 7/1/24 Order, but also distributed "to team" and updated a calendar. Although block billing generally "makes it more difficult to determine how much time was spent on particular activities," *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), undersigned recognizes that "no Arizona authority holds that a court abuses its discretion by awarding fees that have been block-billed." *RS Indus., Inc. v. Candrian*, 377 P.3d 329, 335 (Ariz. Ct. App. 2016). With that acknowledgment, it is challenging to parse what time was used for what task.

The above issues illustrate some of undersigned's concerns regarding the itemization of hours expended, and undersigned determines that Plaintiffs have failed to meet their burden to sufficiently demonstrate the reasonableness of their hourly rates (at least as to the non-lawyer professionals) and the number of hours (as to all professionals). Consequently, it is extremely difficult, if not impossible, to conduct a reasoned and sound lodestar calculation. Even if undersigned were to be able to calculate the lodestar amount, undersigned has serious concerns about reasonableness of the fees sought, as the bulleted list illustrates. When considering the award of attorneys' fees, undersigned believes it appropriate to consider the history of this particular case in conjunction with the factors enumerated by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). *See also Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992) (internal citations omitted). The *Kerr* factors are:

(1) the time and labor required,
(2) the novelty and difficulty of the questions involved,
(3) the skill requisite to perform the legal service properly,
(4) the preclusion of other employment by the attorney due to acceptance of the case,
(5) the customary fee,
(6) whether the fee is fixed or contingent,
(7) time limitations imposed by the client or the circumstances,
(8) the amount involved and the results obtained,

(9) the experience, reputation, and ability of the attorneys,

(10) the "undesirability" of the case,

(11) the nature and length of the professional relationship with the client, and

(12) awards in similar cases.

526 F.2d at 70; *see also* LRCiv 54.2(c)(3) (listing *Kerr* factors as items of discussion in an attorneys' fees motions filed in this Court).

Plaintiffs did not acknowledge *Kerr* in their Motion and memorandum, and as described above, they did not address all the *Kerr* factors in an analysis of LRCiv 54.2(c)(3).  (*See* Doc. 25.)

This matter is a straightforward case, wherein the ADC Defendants failed to participate in these proceedings and the other defendants either settled or were dismissed. The time and labor required to prosecute this matter is typical for its case type and not extraordinary.  The questions involved in this matter were not particularly novel or difficult. Plaintiffs' counsel did not have to conduct any discernible discovery, and there were no complex or significantly contested issues.  After considering the *Kerr* factors (as described here or discussed in this Report and Recommendation, *supra*) and controlling case law, undersigned would be inclined to conclude no reason exists to adjust the lodestar. However, again, the lodestar is not evident, and therefore, a recommended determination regarding *Kerr* is not made.

Against the backdrop of that analysis, undersigned returns to counsels' history in this case.  First, as discussed, *supra*, Plaintiffs' default judgment motion fell short in two major respects.  Plaintiffs failed to analyze, much less even mention, the important issue of choice of law.  (*See* Doc. 21.)  In addition, Plaintiffs are required to prove up damages, but their pleadings (up until that point) were devoid of the required evidence; their attachments to their Complaint did not provide the required evidence, and their default judgment motion failed to include any supporting declarations.  (*See* Docs. 1, 21.)  Their default judgment motion failed to request an evidentiary hearing.  (*See* Doc. 21.)  Thus, the default judgment motion failed to comply with Rule 55(b).  When undersigned pointed out the deficiency, undersigned afforded Plaintiffs the opportunity to correct it.  (Doc. 23.)

1   Plaintiffs did so, but only partially.

2       Specifically, Plaintiffs provided the Court with sworn declarations, but they failed

3   to explain the discrepancy in the sought accrual date for the pre-judgment interest. (*See*

4   Docs. 24, 24-1.) As explained, *supra*, Plaintiffs averred in their original default judgment

5   motion that they "began their money demands for the fully calculated sum of their original

6   $35,000 investments in (sic) December 1, 2022 and reiterated those demands through 2023,

7   including in April 2023." (Doc. 21 at 14.) After undersigned pointed out that no

8   declarations were provided (Doc. 23), Plaintiffs then provided the Court with sworn

9   declarations containing new dates for their demands. (Doc. 24-1.) Plaintiffs made no effort

10  whatsoever to reconcile their initially requested date of December 1, 2022 with the date

11  contained in their declarations (March 28, 2023 and April 3, 2023, respectively). (*See*

12  Docs. 24, 24-1 at 2 and 7.) And, despite their own sworn declarations that those were the

13  dates on which they made their repayment demands, Plaintiffs did not withdraw or amend

14  their December 1, 2022 date when they supplemented their default judgment motion. (*See*

15  Doc. 24.) Plaintiffs' counsel could have amended their request to this Court to comport

16  with their clients' sworn declarations. For whatever reason, they did not do so.[12]

17      Unfortunately, the default judgment motion was not the only deficiency the Court

18  had to bring to Plaintiffs' attention. As stated, *supra*, Plaintiffs' default judgment motion

19  referred the Court to a separately filed attorneys' fees application. (Doc. 21 at 15.) It was

20  only when undersigned pointed out to Plaintiffs that they failed to file their attorneys' fees

21  motion that they filed one. And in their itemization, Plaintiffs' billing entries show that a

22  paralegal began a draft of such an application in September 2023, but it was not finalized

23  until after entry of the Court's July 1, 2024 Order. (*See* Doc. 25-1 at 30, 32.) Therefore,

24  the record indicates that the attorneys' fees motion was not in final, filing form until July

---

[12] Plaintiffs' counsel's billing entries indicates that he had calls with Plaintiffs Threadgill and Christy in July 2024 "to review timing of demands of their investment money" and also "reviewed allegations in the complaint for demands." (Doc. 25-1 at 32.) Thus, it appears he would have had occasion to consider the discrepancy.

2024.  Put another way, the default judgment motion referred to a document that was not finalized or ready to be filed.  Then, when Plaintiffs did file their attorneys' fees motion, they failed to fully comply with LRCiv 54.2 (not only in a substantive way as to supporting the application for fees under LRCiv 54.2(c) and meeting their burden under *Carson*, but also in LRCiv 54.2(e)(3)'s requirements regarding sought non-taxable expenses) and inexplicably sought reimbursement for parties not related to the Motion and other issues as described, *supra*.  Undersigned notes that counsel took those actions after undersigned specifically reminded counsel in her July 1, 2024 Order "of the importance of complying with the established case law and the requirements contained therein."  (*See* Doc. 23 at 4.)

After considering all of the above in light of the applicable case law, statutes, Federal Rules of Civil Procedure, and the Local Rules, undersigned will recommend that Plaintiffs' Motion for attorneys' fees and costs be denied.[13]  Admittedly, the issue of whether the denial should be with or without prejudice has given undersigned pause.  Given the multitude of deficiencies identified – and undersigned's concern that a renewed or amended motion for fees and costs may continue to be deficient, given the history in this case, which would cause further expenditure of limited judicial resources – undersigned would be inclined to recommend the denial be with prejudice.  In the interests of justice and fairness to Plaintiffs Threadgill and Christy, though, undersigned will nonetheless recommend denial without prejudice.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE RECOMMENDED:**

1.  That Plaintiffs' Motion for Entry of Default Judgment against Defendants Ryan

---

[13] If the District Judge were inclined to award fees, undersigned would recommend that the District Judge find Plaintiff significantly reduce the fees requested for the reasons detailed, *supra*.  If the District Judge were inclined to award costs (even without the required documentation of LRCiv 54.2(e)(3)), undersigned would recommend costs be awarded only as to the parties subject to the default judgment motion.  The itemization contains costs associated with other individuals, as described, *supra*.  (*See* Doc. 25-1 at 22-32.)

34

Morgan and All Done Consulting, LLC, filed September 29, 2023 (Doc. 21) be granted as to the state law claims (Counts 1-4, 7-8) of Plaintiffs Threadgill and Christy and that the federal claims in the Complaint (Counts 5-6) be dismissed[14];

2.  That Plaintiffs Threadgill and Christy each be awarded damages in the amount of $70,000.00 (representing each Plaintiff's $35,000.00 investment amount) plus pre-judgment interest in the amount of $9.58 per day, starting on March 28, 2023, plus post-judgment interest.  To the extent that Plaintiffs continue to request an earlier accrual date of December 1, 2022 for their sought pre-judgment interest, undersigned recommends that request be denied; and

3.  That Plaintiffs' Motion for Award of Attorneys' Fees and Costs Against Defendants All Done Consulting, LLC and Ryan Morgan, filed July 19, 2024 (Doc. 25) be denied without prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the

---

[14] As discussed, *supra*, Plaintiff Orzalli was dismissed as a party.  Thus, the Motion for Entry of Default Judgment only applies to Plaintiffs Threadgill and Christy and is recommended to be granted as them only.  Further, as detailed, *supra*, Plaintiffs' Motion for Entry of Default Judgment concerns only their state law claims.

findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 15th day of August, 2024.

Honorable Alison S. Bachus
United States Magistrate Judge